IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

|  |  |  |
|---|---|---|
| JOYCE WESTBROOK | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | |
| CITY OF WEST MEMPHIS, ARKANSAS, and ARBURT ROBINSON, individually and in his official capacity as fire chief for West Memphis | * | NO: 3:05CV00093 SWW |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants | * | |
| | * | |

**ORDER**

Plaintiff Joyce Westbrook ("Westbrook") brings this action pursuant to Title VII of the 1964 Civil Rights Act and 42 U.S.C. § 1983 against the City of West Memphis and Arburt Robinson ("Robinson"), charging Defendants with sexual harassment in the form of a hostile work environment and retaliation. Before the court is Defendants' motion for summary judgment (docket entry #25) and Westbrook's response (docket entry #34). After careful consideration, and for the reasons that follow, summary judgment will be granted in Defendants' favor, and this case will be dismissed with prejudice.

I.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

1

of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

II.

Westbrook began working for the West Memphis Fire Department in 1997 as a dispatcher. In May 2003, Defendant Robinson was elected fire chief, and Westbrook, at Robinson's request, became his secretary.

When Westbrook started her new job as Robinson's secretary, Robinson took her to various City offices and introduced her. Each morning, Westbrook would go from the fire department to the police department to pick up paperwork, which she used to prepare reports. Robinson insisted on accompanying Westbrook on her daily trip to the police department.

On occasion, Westbrook performed work on computers located at the various city fire stations–a task not included in her job description. Robinson would accompany Westbrook

when she visited the fire stations, and he gave her time off for the time she spent working on fire station computers.

In August 2003, Robinson told Westbrook that he had observed her talking to another city employee–Dennis Brewster. According to Westbrook, Robinson stated, "I felt like [your husband] would feel when he sees you talking to another man." Docket entry #26, Ex. A, at 14. Westbrook replied, "Chief, Dennis is my friend. You cannot tell me not to talk to Dennis." *Id*. Westbrook states that before her conversation with Robinson regarding her fraternization with Dennis Brewster, she was Robinson's friend; but after the conversation, she became his enemy. *Id*. at 16.

Sometime after August 2003, Robinson told Westbrook that his wife had inquired about his relationship with Westbrook and indicated that she did not approve of Westbrook working as his secretary. Docket entry #26, Ex. 1, at 17. About a month later, Robinson directed Westbrook to stop going to the police department to pick up paperwork. *Id*. Westbrook states that Robinson's directive forced her to wait for someone else to bring her paperwork, which delayed her ability to prepare reports.

When Robinson became fire chief, the fire department contained three restrooms. Robinson altered one restroom in June or July 2003 by removing the toilet and installing an ice machine. Another restroom adjoined a dispatch office in the back of the fire department. Robinson converted the dispatch office into a restricted, paramedics office, which contained drugs. The new restricted office and its adjoining bathroom became inaccessible to anyone other than three paramedic employees, all men, who had a key. Westbrook requested a key to the restricted office so that she could used the adjoining restroom, but Robinson refused her request.

Consequently, Westbrook and another female employee, Dana Voyles, had only one restroom available to them. That restroom adjoined Voyles' office. On one occasion, Voyles was absent from work, and Westbrook could not use the restroom because she left her key to Voyle's office at home.

In October 2003, Robinson was standing near Westbrook when she was talking on the phone to a fire department employee. In the course of her phone conversation Westbrook said, "Don't cuss me." Docket entry #34, Ex. 1, at 35. Robinson grabbed the phone from Westbrook and said, "This is Chief Robinson. Who is this?" *Id.* The person on the phone identified himself as Jemal and explained that he and Westbrook were "just playing around" and that he did not actually "cuss" her. Westbrook states that Robinson "slammed the phone back down in Jemal's ear and . . . left." *Id.* at 36.

Sometime after August 2003, Robinson, in Westbrook's presence, told another fire department employee, that he would be absent the next day. Westbrook indicated to Robinson that she felt slighted because he did not address her when he announced that he would be gone the next day. *See* docket entry #26, Ex. A, at 38. In response, Robinson fell on his knees and said, "What do you want me to do? Will you forgive me? I'm going to have a wreck tomorrow wondering if you're going to forgive me or not." *Id.*

On May 3, 2004, Westbrook filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). That complaint reads as follows:

> I have been subjected to undue harassment because of my sex, female, an in retaliation for my association with an employee who has filed previous charges of discrimination. I am presently employed as the secretary of fire reporting and records. I have been employed since 1997.
>
> There has been no reason given by the employer for its actions.

> I believe that I have been discriminated against in violation of Title VII . . in that Chief Robinson a black male has subjected me to undue harassment in that he has grabbed a phone out of [my] hand, he has attempted to control who I talk to and has called me a "watch dog." Chief Robinson also moved the ladies restroom out of my immediate area and has refused to give me a key.

Docket entry #26, Ex. D.

Sometime after Westbrook filed her EEOC complaint, other employees told her that Robinson left the fire department "spinning his tires."[1] Docket entry #34, Ex. 1, at 44. Westbrook called Mayor William Johnson's office and reported the tire spinning incident. The next day, Mayor Johnson summoned Westbrook to his office. Westbrook states that she told the Mayor about Robinson taking the phone from her and begging her forgiveness on bended knees. *See* docket entry #34, Ex. 1, at 48. Mayor Johnson asked Westbrook if Robinson had ever asked her for sex or uttered sexually suggestive remarks to her, and she answered, "No." *Id*. at 50. The day after Mayor Johnson's meeting with Westbrook, he talked to Robinson and told him that Westbrook "wanted to be treated with respect." Docket entry #26, Ex. B, at 13.

Sometime after Westbrook's meeting with Mayor Johnson, Robinson stared at her during a meeting "with a great deal of hate in his eyes." Docket entry #35, at 2. Additionally, Robinson moved Westbrook to an office at the front of the fire department building. Westbrook states that she has no sign on her door, and her desk has no drawers to store a purse and personal items. Additionally, she states that she has no filing cabinet and must store papers on a table in the restroom. Finally, Westbrook claims that Robinson attempted to "dock her five and one-half

---

[1] Westbook presents no evidence indicating that Robinson's alleged "tire spinning" had any connection to her.

hours of pay when it should have been a half hour of no pay."[2]

III.

Defendants move for summary judgment arguing that Westbrook cannot establish a prima facie case of sexual harassment or retaliation. For the reasons that follow, the Court agrees.       To make out a prima facie case of sexual harassment, Westbrook must prove: (1) that she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Wright v. Rolette County* 417 F.3d 879, 885 (8th Cir. 2005)(citing *Erenberg v. Methodist Hosp.,* 357 F.3d 787, 792 (8th Cir.2004)).

"To determine whether the harassment affected a term, condition, or privilege of employment, [a court must] consider 'the frequency of the behavior, its severity, whether physical threats are involved, and whether the behavior interferes with plaintiff's performance on the job.'" *Id.* (citing *Henthorn v. Capitol Communications, Inc.,* 359 F.3d 1021, 1026 (8th Cir.2004)). "'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"

---

[2] Westbrook cites Robinson's deposition testimony in support of her claim that he docked her pay. According to Robinson's testimony, he determined initially that due to Westbrook's absences, her pay should be docked five and one-half hours. Docket entry #34, Ex. 12, at 15. However, after consulting Dana Voyles, who processed the payroll, Robinson determined that Westbrook should lose only one-half hour of pay time. *Id*. at 16.

Westbrook also states that Robinson denied her vacation time "under the pretext of having to hand out paychecks." She cites page 129 of her deposition testimony in support of this claim, but she failed to provide that portion of her deposition testimony.

*Id.* (citing *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1158 (8th Cir. 1999)). "In order to affect the term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to create an objectively hostile work environment, and in addition, must be subjectively perceived by the plaintiff as abusive." *Id.* (citing *Kratzer v. Rockwell Collins, Inc.,* 398 F.3d 1040, 1047 (8th Cir.2005)).

Westbrook argues that Robinson's actions seemed "benign" but "in hindsight were obvious attempts by him to solicit sexual favors which she never reciprocated." Docket entry #35, at 1. Westbrook presents no evidence that Robinson made unwelcome sexual advances or requested sexual favors, and she cites only two instances when Robinson's conduct arguably had a connection to her gender--when he stated that he felt the same as Westbrook's husband would feel if he saw her talking to another man, and when he stated that his wife did not approve of Westbrook working as his secretary. No reasonable juror could find from the evidence presented that Robinson's conduct amounted to sexual harassment or an attempt to gain sexual favors.

Even if Robinson's conduct amounted to harassment, it was not so severe or pervasive as to create an objectively hostile work environment. The Eighth Circuit has held that conduct much more egregious than Robinson's did not support a hostile work environment claim. *See LeGrand v. Area Resources for Community and Human Services,* 394 F.3d 1098 (8th Cir. 2005)(finding no actionable hostile work environment where the alleged harasser's "manifestly inappropriate" behavior included physically touching the plaintiff and asking him to watch pornographic movies); *Tuggle v. Mangan.* 348 F.3d 714 (8th Cir. 2003)(finding no actionable hostile work environment where alleged harassment included inappropriate direct sexual comments, posting a photograph of plaintiff's rear end, and giving plaintiff undesirable work

assignments); *Duncan v. General Motors,* 300 F.3d. 928 (8th Cir.2002)(finding no actionable hostile work environment where alleged harasser propositioned the plaintiff, improperly touched the plaintiff's hand several times, requested the plaintiff to draw a sexually graphic planter in his office for a promotion, displayed graphic and sexually explicit images on his computer for the plaintiff to see, and asked the plaintiff to type a document for him containing sexually offensive items).

To establish a prima facie case of retaliation, Westbrook must present evidence that (1) she engaged in activity protected under Title VII; (2) an adverse employment action was taken against her; and (3) a causal connection between the two. *See Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 936 (8th Cir. 2006).

Regarding the second element of a prima facie case, in *Burlington Northern & Santa Fe Railway Co. v. White,* 126 S.Ct. 2405 (2006), the Supreme Court clarified that in order to show adverse employment action sufficient to sustain a retaliation claim under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415(citations omitted).

Westbrook alleges that after she filed a discrimination charge in May 2004, Robinson stared at her during a meeting with a hate in his eyes, moved her to an office that has no sign on the door and little storage space, and attempted to dock her pay for more time than justified. The Court finds that Westbrook has failed to allege adverse employment action sufficient to overcome summary judgment. Additionally, Westbrook has failed to present facts showing a causal connection between her filing an EEOC charge or meeting with Mayor Johnson and the alleged adverse employment action. *See Thompson v. Bi-State Development Agency,* 463 F.3d 821(8th Cir. 2006)(explaining that, generally, more than a temporal connection between

protected activity and adverse employment action is required to present a genuine factual issue on retaliation).

IV.

For the reasons stated, the Court finds that no genuine issues for trial exist with respect to Plaintiff's claims. Accordingly, Defendants' motion for summary judgment (docket entry #25) is GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 24TH DAY OF OCTOBER, 2006.

/s/Susan Webber Wright<br>UNITED STATES DISTRICT JUDGE